# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1405V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| | \* | |
| WILLIAM EFRON, | \* | Chief Special Master Corcoran |
| | \* | |
| Petitioner, | \* | Filed:  April 11, 2025 |
| | \* | |
| v. | \* | |
| | \* | |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Mark T. Sadaka*, Law Offices of Sadaka Associates, LLC, Englewood, NJ, for Petitioner.

*Nina Ren*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On October 16, 2020, William Efron filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleged that an influenza vaccine he received on October 20, 2017, caused or significantly aggravated his "cold intolerance, tremor, myalgia, fatigue and anhidrosis." Petition (ECF No. 1) at 1. A two-day entitlement hearing was held on June 4 and August 14, 2024, in Washington, D.C.,[3] and on January 2, 2025, I denied entitlement. *See* Entitlement Decision (ECF No. 82). That determination was not appealed.

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

[3] The hearing dates were non-consecutive, in order to accommodate expert schedules.

Petitioner has now filed a final motion for an award of attorney's fees and costs. Motion, dated Mar. 30, 2025 (ECF No. 85) ("Final Fees Mot."). Petitioner previously requested an interim fees award in July 2024 (ECF No. 67), seeking compensation for time billed to the matter from its initiation through June 2024. In August 2024, he supplemented his interim request (ECF No. 73) to include attorney time through the second day of hearing in August. Petitioner was subsequently granted $118,327.81 – although an award of expert costs was deferred until the case's ultimate conclusion. Interim Fees Decision, dated Sep. 25, 2024 (ECF No. 78).

In this final fees motion, Petitioner initially requested an additional $80,004.39 ($8,393.70 in fees and $71,610.69 in costs) for the work of attorney Mark T. Sadaka and his support staff. Final Fees Mot. at 4; ECF No. 85-1 at 1-3. Respondent reacted to the final request on March 31, 2025. (ECF No. 86). Respondent deferred to my discretion as to whether the statutory requirements for an award of attorney's fees and costs were met in this case, and if so, the calculation of the amount to be awarded. *Id.* at 2, 5-6. On April 7, 2025, Petitioner filed a reply, requesting an additional $10,750.00 in expert's costs, which had been omitted in error from his final fees motion. Reply, dated Apr. 7, 2025 (ECF No. 87) ("Reply"). Petitioner clarified that his total request now amounted to $90,754.39 ($80,004.39 original request, plus $10,750.00 in costs for Dr. Jeret's trial preparation and testimony). Reply at 2.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioner's motion, awarding fees and costs in the total amount of **$72,736.29**.

## ANALYSIS

### I.    Petitioner's Claim has Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited if unreasonable, or even denied entirely.

A claim's reasonable basis[4] must be demonstrated through some objective evidentiary

---

[4] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[5]

Although Petitioner's claim was ultimately unsuccessful, I find there was sufficient objective basis to entitle him to a fees and costs award. Although Petitioner was unable to establish a diagnosis of fibromyalgia, he was able to preponderantly prove that he had anhidrosis, and thus there was some evidence of a post-vaccination injury. Moreover, Petitioner's overall post-vaccination health course revealed symptoms consistent with his contentions. And Petitioner presented evidence that *some* treaters considered the possibility that his injury could be associated with his receipt of the flu vaccine. Accordingly (and because I find no other reason to deny fees despite the claim's disposition), a final award of fees and costs in this matter is appropriate.

## II.    Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method - "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*,

---

[5] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Mr. Sadaka practices in Englewood, NJ—a jurisdiction that has been deemed "in forum." Accordingly, he is entitled to the rates established in *McCulloch*. *See Jaffri v. Sec'y of Health & Hum. Servs.*, No. 13-484V, 2016 WL 7319407, at *5–6 (Fed. Cl. Spec. Mstr. Sept. 30, 2016). Although I have no basis for any reduction in fees to be awarded based on the time incurred on the matter in the relatively-short timeframe at issue (August 2024 to the present), the rates requested merit some slight adjustment.

In the present motion, Petitioner requests a single hourly rate of $532.00 for work performed by Mr. Mark Sadaka in the 2024-25 timeframe, and $197.00 for Ms. Michelle Curry (Paralegal) for that same period. ECF No. 85-1 at 1-3. I awarded the requested 2024 rate for Ms. Curry in my interim fees decision, and will therefore embrace the same rate herein. *Efron v. Sec'y of Health & Hum. Servs.*, No. 20-1405V, 2024 WL 4604594, at *3 (Fed. Cl. Spec. Mstr. Sept. 25, 2024). But the same interim award allowed only $515.00 per hour to Mr. Sadaka for his 2024 work. *Id.* Petitioner nevertheless asks now for a higher rate for the same year, citing a decision from the "Special Processing Unit" (OSM's division for resolving cases deemed likely to settle), in which $532.00 per hour was awarded. *See Richardson v. Sec'y of Health & Hum. Servs.*, No. 21-1781V, 2024 WL 4814753, at *2 (Fed. Cl. Spec. Mstr. Oct. 10, 2024).

In order to maintain consistency with the "law of the case" in this matter, I will utilize the rate already set herein for 2024 work, and compensate Mr. Sadaka only at a rate of $515.00 per hour. Application of the foregoing reduces the amount of fees to be awarded by $115.60. (In future matters, however, I will be amenable to awarding Mr. Sadaka a $532.00 hourly rate for 2024 work). I will, however, utilize the $532.00 per hour rate for the time billed to the matter in 2025.

As a result of these rate adjustments, I reduce the total sum of fees to be awarded by $115.60, and I will award a total of $8,278.10.

4

### III.    Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002): *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $82,360.69 in outstanding costs, including run-of-the-mill litigation costs (i.e., mailing costs), plus costs associated with the work of two experts, Omid Akbari, M.D. and Joseph Jeret, M.D. ECF No. 85-1 at 3; Reply at 1. I make no adjustments to the general litigation costs requested.

Dr. Jeret prepared one written report in this matter and testified on behalf of Petitioner. He submitted an invoice for a total of $16,625.00 (at an hourly rate of $500.00 for 20.25 hours of work and an hourly rate of $2,000 for 5 hours of testimony (minus a $3,500.00 retainer fee)). ECF No. 87-1. In his Reply, Petitioner clarified that $5,875.00 had already been awarded in my interim fees decision, so the final request for Dr. Jeret's work amounts to $10,750.00. Reply at 1; *Efron*, 2024 WL 4604594, at *4. The amount of time billed by Dr. Jeret was reasonable, and his requested rate is fair. Thus, these expert costs shall be awarded in full without reduction.

Dr. Akbari prepared three written reports in this matter and also testified on behalf of Petitioner at hearing. He submitted three invoices for a total of $71,610.00 (at an hourly rate of $550.00 for 130.2 hours of work), with a retainer fee of $5,000.00. ECF No. 85-2 at 2-10. In his interim fees motion, Petitioner submitted these invoices and requested their reimbursement, but I deferred ruling until the conclusion of the case. *Efron*, 2024 WL 4604594, at *4. In particular, I found the expert costs requested by Dr. Akbari to be "extremely high," and noted that they "may not prove to be warranted in full." *Id.* I explained that I was unable to assess whether the rates were incurred reasonably until I decided the case. *Id.*

In light of my decision in this case, I deem the fees requested for Dr. Akbari to be excessive. I expressly found his opinion "unreliable and unpersuasive" (ECF No. 82 at 27). And the case itself did not warrant the amount of work Dr. Akbari performed on the matter – especially given the overall thin quality of the claim presented, which relied heavily on a single anhidrosis test result obtained many months after vaccination. Under such circumstances, it is not appropriate to compensate an expert for so many hours of work. Instead, I will apply an across-the-board

reduction of 25 percent, reducing the sum to be awarded herein for Dr. Akbari's work to $53,707.50.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs. Petitioner is awarded a total amount of **$72,736.29,** reflecting $8,278.10 in attorney's fees and $64,458.19 in costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision. [6]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.